[No. 17025. Department Two. October 2, 1922.]

INTERNATIONAL LUMBER EXPORT COMPANY, *Respondent,* v. M. FURUYA COMPANY, *Appellant.*[1]

SALES (29, 166)—CONTRACT—CONSTRUCTION—QUANTITY AND ASCERTAINMENT—INSTRUCTIONS. In an action for the price of a quantity of white cedar cants, under a contract calling for measurement based on the "U. S. Government rule, similar to that measurement of sample shipment first sold," in which it appears that the invoices on the first shipment contained a "trapezoid" diagram with directions for measurement which was forty per cent less than subsequent deliveries based on the "string" or "right angle" measurement, the issue is as to what measurement was agreed upon, where there was a dispute as to notice and refusal to measure by the "trapezoid method"; and instructions should have been given therein as to whether the parties complied with the "U. S. Government" rule, and not upon the "trapezoid measure," in the absence of evidence that they were practically the same.

EVIDENCE (104)—HEARSAY. Upon an issue as to the measurement of cedar cants sold, evidence of a witness as to measurement of cants delivered should be struck out as hearsay, where he testified that he had not measured them and knew only what his man had told him.

APPEAL (445)—HARMLESS ERROR—ARGUMENT OF COUNSEL. Misconduct of counsel in argument concerning the credibility of a Japanese witness is cured by a prompt instruction of the court.

Appeal from a judgment of the superior court for King county, Gilliam, J., entered September 17, 1921,

[1]Reported in 209 Pac. 858.

upon the verdict of a jury rendered in favor of the plaintiff, in an action on contract. Reversed.

*Walter A. Keene,* for appellant.

*Earl G. Rice* and *John F. Dore,* for respondent.

HOLCOMB, J.—Respondent sued appellant to recover the purchase price of 92,794 feet of Port Orford No. 1 cedar, vertical grained, cants at the contract price of $100 per thousand feet, on which there had been a payment made of $5,000, leaving a balance, as claimed by respondent, of $4,279.40; and also further sums sought to be recovered on account of loading charges amounting to $209.25, and $52.13, barge hire, alleged to have been necessary by reason of the delayed acceptance of the cants.

The sale was made upon a written order from appellant set out in the complaint, dated April 5, 1920, specifying two lots of No. 1 Port Orford white cedar, vertical grain, cants: one of 60,000 feet at $100 per thousand feet, F. A. S., i. e., at side of steamer, Seattle, and one of 30,000 feet, same kind of cants, same price, F. A. S. steamer.

In its second amended answer and cross-complaint, appellant admitted that respondent furnished and delivered 64,138 feet, and no more, of the white cedar cants under the order given respondent, and alleged that it had paid $5,000 and other sums to respondent, and had thereby overpaid respondent to the extent of $939.20; and, also, by way of cross-complaint, alleged and prayed damages in the sum of $6,314.42 by reason of alleged failure of respondent to perform its contract, thereby causing appellant to lose considerable sums of money in actual expenditures, and a loss of more than $2,000 anticipated profits. The damages

seem to have been abandoned and nothing but the over-payment urged upon us.

These affirmative matters were put in issue by respondent's reply.

Cants are split portions of a log, usually about one-fourth of a log from the butt cut of the cedar tree, and are from six and one-half feet in length upwards, and were obtained on Coos Bay, Oregon. Number 1 cants are cants from which the rotten heart has been removed, containing no knots showing on the bark face, and not more than two large or seven small knots showing on the heart face.

In October, 1919, the respondent had solicited business from appellant and had received an order for a small shipment of white cedar, which in January, 1920, was delivered to appellant. This shipment was immediately shipped to Japan on the S. S. Kashima Maru. It arrived there about February 17, 1920. Sometime in February, 1920, appellant gave respondent a verbal order for 90,000 feet of white cedar cants, for which the written order dated April 5, 1920, was afterwards substituted. On March 20, 1920, the first shipment of the 90,000 feet order was shipped to Japan on the S. S. Suwa Maru. On June 8, 1920, the second shipment was sent to Japan on the S. S. Uralasan Maru. August 22, 1920, the third and last shipment of cants was sent to Japan on the S. S. Kaiku Maru.

On the first sale of October, 1919, which was shipped in January, 1920, respondent's manager made a diagram of the method of measurement of cants on the invoices or bills of lading. This diagram constituted the form of a trapezoid figure, and gave directions for measuring as follows: "Add top width 20 to bottom width 10,-30, divide by 2,-15, multiply by length, 25, bolt measure 15 by 25 times length;" this being an

illustration of a supposed measurement. The term "trapezoid" method is therefore constantly used by appellant, but respondent never made use of that term.

The subsequent delivery of cants after the one in January, 1920, which is called by appellant the "sample sale and shipment," were not measured by respondent in the manner indicated on the original or sample sale, but were measured by either the "string measure" or "right angle" measure, so called by witnesses engaged in the trade.

The invoice which was delivered by respondent to appellant on July 16, 1920, of the 90,000 feet of cants, contained this paragraph:

"Agreement: We agree to pay storage charges not to exceed a period of six months from July 1, 1920. It is agreed that measurement tally shall be based on the U. S. Government rule, similar to that measurement of sample shipment first sold to your company."

The question which should have been decided on the trial was this: What method of measurement was agreed upon between the parties for measuring the 90,000 feet of cants? Respondent's manager testified that, after the first or sample sale and shipment, he told the assistant manager of appellant, one McIntyre, that he would not furnish any more cants on what appellants call the "trapezoid method" of measurement, but would furnish them on string or right angle measurement, which it was generally agreed by the witnesses amount to about the same upon large quantities. Trapezoid measurement is about 40 per cent less than string or right angle measurement on large quantities. Appellant contends that, when it gave its order for the 90,000 feet of cants, not specifying any method of measurement, it presumed, and had the right to presume, that the method of measurement would be the

same as that for the first or sample sale and shipment, and that when the measurement was found not to be in conformity with the measurement upon which it supposed it was buying, it had a right to settle according to the trapezoid method of measurement on which it bought.

Undoubtedly the case should have been submitted to the jury on the facts shown in this case as to whether the measurement of the cants furnished by respondent complied with the agreement on its invoices that the measurement tally should be based on the U. S. Government rule, the same as or similar to the measurement of the sample shipment first sold to appellant. This was not done. There was evidence by witnesses as to what the U. S. Government method of measuring split log cants is. There was evidence also as to what the string and the right angle methods of measurement are. The method used by respondent on its three shipments of the 90,000-foot order were string and right angle, which witnesses say amounts to about the same thing. The trial court instructed the jury that "the burden of proving that there was an agreement that the cants should be measured by the method referred to as trapezoid measurement is upon the defendant, and before you would be justified in finding that such an agreement was entered into, the defendant must prove the same by a fair preponderance of the evidence," and that was right, except in restricting the matter by the use of the words "trapezoid measure." The court should have used the words "U. S. Government rule," as agreed to by respondent, and should have advised the jury that they should find what the U. S. Government method of measurement was from the testimony of the witnesses, and then find whether or not respondent complied with its contract in fur-

nishing the 90,000 feet or more, as shown by the testimony, and from that find whether appellant had overpaid, or whether it still owed, respondent.

According to the record in this case, there is a conflict in the evidence as to whether respondent's manager advised appellant's assistant manager that respondent would not measure the cants of the 90,000-foot order by the so-called "trapezoid measure," but would measure them by the string or right angle methods of measurement. Appellant's requested instruction No. 1 was therefore properly refused. It is very lengthy and not necessary to be set forth here. It was upon the theory that appellant had a right to presume that in giving subsequent orders, after receiving the white cedar cants in the first or sample order, so-called, it could rely upon the trapezoid method of measurement, unless otherwise mutually agreed upon between the parties.

Another instruction which should have been given under the issues and evidence of the case, and requested by appellant, is this:

"I instruct you that if you shall find from the evidence that defendant protested and refused to pay plaintiff for the said cedar on the basis of right angle or string measure, and that thereafter a settlement of this controversy was agreed upon between the parties, pursuant to which settlement defendant paid plaintiff the sum of $5,000 and in consideration of such payment plaintiff agreed that said cedar should be measured and paid for by trapezoid measure, then I instruct you that such an agreement and settlement was legal and binding upon the parties to this suit, and entitles the defendant to have said cedar measured by trapezoid measure."

The words "U. S. Government measure" should be substituted for the words "trapezoid measure," unless there is evidence on the retrial of this case that trape-

zoid measure and U. S. Government measure are practically the same, since both parties should be bound by the terms "U. S. Government measure" as specified in the invoice. Such an instruction is proper because appellant pleaded overpayment under its alleged method of measurement, and the right to recover the overpayment.

The trial court further erred in instructing the jury in three paragraphs of instructions that appellant had admitted in its pleading that the prior shipment of 16,854 feet of cants had been paid for in full; and that appellant, in its answer, admitted that plaintiff had delivered 64,138 feet of cants which came up to the specifications contained in the written order in which is included the 16,854 feet which had been paid for in full, leaving 47,284 feet which appellant admits receiving, leaving a net balance due for the cants of $4,728.40 to be adjusted in this law suit, and which appellant claimed it overpaid by the $5,000 payment. The court further reiterated that defendant admitted that it received 64,138 feet of cants which came up to standard, that 16,854 feet of these were contained in the first shipment made of the 90,000-foot order, and which had been fully paid for.

Appellant did not admit that it had received 64,138 feet of cants which came up to standard, but admitted that it had received that number of feet in all of the 90,000-foot order, instead of 92,794 feet as alleged by respondent.

On the 90,000-foot order, 6,682 feet, string measure, constituted the shipment of March 20, 1920, on the S. S. Suwa Maru. The second shipment consisted of 16,854 feet, string measure, shipped June 8, 1920, on the Uralasan Maru, and the third and last shipment on August 22, 1920, on the Kaiku Maru amounting to

25,833 feet, string measure. Appellant claimed that by its various payments, including the $5,000 payment, it had overpaid respondent $939.20. It will thus be seen that the instructions given by the court as to the admissions and contentions made by appellant were incorrect, and misstated and confused the issues.

Another error claimed by appellant is the refusal of the court to strike the testimony of respondent's witness and manager Roy that respondent delivered on the dock 92,794 feet of cants under the 90,000-foot order. Roy testified on cross-examination that he had not measured the cedar and was not present when it was measured, and that all he knew about it was what his man had told him. This evidence was clearly hearsay and incompetent and should have been stricken. It was all of the evidence as to the quantity delivered that respondent introduced. The method of measurement and tally was the paramount matter in issue. The evidence should have been produced of the person who made the measurement and tally.

Alleged misconduct of counsel for respondent in his argument to the jury concerning the credibility and integrity of Japanese was probably cured by the prompt instruction of the court. It should not, and probably will not, occur again.

The case was one to go to the jury on the issues and the facts, and the motion for judgment notwithstanding the verdict, claimed by appellant, should not have been granted.

For the errors heretofore discussed, the judgment will be reversed and the case remanded for new trial. Reversed and remanded.

PARKER, C. J., MAIN, MACKINTOSH, and HOVEY, JJ., concur.